13481

COWARD v. JONES

(166 S. E., 96)

*Messrs. Stoney, Crosland & Pritchard,* for appellant, cite:

*Messrs. N. B. Barnwell* and *Harold Ham,* for respondent,

October 4, 1932.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, by Glen A. Coward, as plaintiff, against the defendant, Dallas L. Jones, was commenced in the Court of Common Pleas for Charleston County June 16, 1931. The

substantive facts alleged by the plaintiff, necessary for an understanding of his contention, briefly stated, are as follows: The defendant, who is an uncle of the plaintiff (his mother's brother), as local manager of the Hecker-Jones-Jewel Milling Company, employed the plaintiff, who was at that time a minor, to work for said company under the defendant's supervision, and requested the plaintiff to turn over to him such sums of money as the plaintiff might be able to set aside out of his salary, "agreeing to return these sums to the plaintiff on demand at any time and agreed to pay to him four per cent. (4%) interest on such sums," and, further, that the funds so turned over by the plaintiff to the defendant were invested by defendant in "various tracts of real estate, improvements thereon and mortgages, all of which were in the name of the defendant, and which investments were unknown to the plaintiff, until the plaintiff made demand for his money, at which time the defendant informed the plaintiff that he was unable to return his money as he had invested it in various parcels of real estate and mortgages"; and, further, alleges that as a result of this information he realized that the various properties in which the defendant had invested the plaintiff's money were impressed with a trust in plaintiff's favor. It is also alleged by the plaintiff that the defendant cut and sold timber on the lands mentioned and that the defendant threatened to continue to commit waste thereon; that the plaintiff would suffer irreparable injury unless an injunction were issued restraining the defendant from committing further waste and from incumbering or disposing of the said property; and the plaintiff also alleged that he was without a remedy at law. The amount which the plaintiff alleged to be owing him by the defendant in the said transaction was $24,216.07, together with interest on the same at the rate of 4 per cent. from January 1, 1931, for which sum the plaintiff demanded judgment against the defendant. The plaintiff also, in the prayer of his complaint, asked for an accounting, for "a temporary injunction and an

injunction *pendente lite,"* for the costs and disbursements of the action and for such further relief as may be equitable and in accord with law.

Upon the summons and verified complaint, before service was made upon the defendant, on motion of plaintiff's counsel, at an *ex parte* hearing his Honor, Judge William H. Grimball, of the Ninth Judicial Circuit, issued an injunction *pendente lite,* which order was served upon the defendant along with the summons and complaint. The essential part of said order, which we quote herewith for the purpose of a clear understanding of the questions involved, reads as follows:

"Ordered, that the defendant, together with his agents and servants, and all others whomsoever, be and he and they are hereby restrained and firmly enjoined during pendency of this action from transferring, conveying, selling, mortgaging, encumbering, assigning, or in any manner disposing of or changing the present status of the property mentioned and described in the complaint in this action.

"Ordered, further, that the original summons and complaint in this action be filed in the office of the Clerk of Court for Charleston County, and that the said Clerk do certify a copy of the said order and complaint, and the plaintiff or his attorneys do immediately place on record in the Clerk of Court's office for Florence County a certified copy of the summons and complaint and order in the Clerk of Court's office for Roanoke County of Roanoke, Virginia, so that all persons whomsoever will have notice of such order, and that the plaintiff will be allowed to file a *lis pendens* in this action in the office of the Clerk of Court for Florence County and in Roanoke County, Virginia.

"Ordered, further, that the plaintiff do execute and file with the Clerk of this Court an injunction bond with at least one good and sufficient surety within ten days from date herein, in the sum of Two Hundred Fifty ($250.00) Dollars."

One of the lots involved is located in the City of Roanoke, County of Roanoke, State of Virginia, and all of the other land referred to, consisting of several tracts or lots, is located in Florence County, this State.

July 8, 1931, the defendant moved before his Honor, Judge William H. Grimball, for an order requiring the complaint in the case to be made more definite and certain, which motion Judge Grimball refused, and from the order refusing said motion the defendant served due notice of intention to appeal to this Court. Thereafter, on or about the 23d day of July, 1931, the defendant, moved before his Honor, Judge Philip H. Stoll (Judge Grimball being absent from his circuit) for an order striking out the paragraphs of the complaint upon which it appears the injunction issued by Judge Grimball was based. This motion was also refused, and, from the order refusing the same, due notice was served on the part of the defendant of his intention to appeal to this Court. But, as we view the case, the two last-mentioned orders are not involved in the present appeal, though reference is made to the same in appellant's brief.

The defendant's answer, covering thirteen pages of the transcript, is summed up in the agreed statement of counsel as follows: "The defendant by his answer admits the delivery to him of various sums of money, but alleges that he and the plaintiff entered into an agreement to jointly operate and improve a portion of the said properties, and alleges that an account was kept of said sums and delivered by the plaintiff to the defendant and interest computed on the same, because the plaintiff and the defendant had a collateral agreement that the defendant could purchase the plaintiff's share of the said partnership by paying all sums advanced by the plaintiff, together with interest at four (4%) per cent.; and the defendant denied that the monies delivered to him by the plaintiff were invested in any of the properties except the one partnership operation referred to above, and that he owed the plaintiff any sum whatsoever."

By reference to defendant's answer it will be seen that the portion of the property he refers to, when he alleges that he and the plaintiff entered into an agreement to jointly operate and improve the same, is the tract of land on which the plaintiff's mother resides, where the plaintiff was reared, and which she inherited from her deceased father. In this connection the defendant alleges in his answer that for a number of years he made large advances from his own funds for farming operations on said place, which, according to defendant's contention, was for the benefit of his said sister and her family; that in 1904, while the plaintiff was yet a minor, defendant took the plaintiff with him to Charleston, S. C., and gave him employment with his employer Hecker-Jones-Jewel Milling Company. In this connection the defendant states that the plaintiff, while working for said company, was "industrious and hard working and when he saved something out of his salary he would voluntarily turn it over to defendant, not as a loan but for safe-keeping and for such use and application by the plaintiff as he should from time to time desire; that after plaintiff came of age, being fully advised and aware of the heavy financial obligations previously assumed and continually borne by defendant in making advances for the farming operations carried on by plaintiff's father and after his death by plaintiff's brothers he joined with defendant in making the further necessary advances for carrying on said farming operations and in making substantial improvements to the Coward farm belonging to his mother as aforesaid and with his full knowledge and consent and approval the money and savings turned over from time to time to defendant by plaintiff as aforesaid were used along with much larger sums of defendant's own money as advances for the operation and improvement of the farm and for the maintenance and support of Mrs. Coward and her family, the total sum so advanced by plaintiff and by defendant jointly during the period from 1905 to 1929 being upwards of Ninety-three Thousand ($93,000.00) Dollars, of

which sum more than Seventy-seven Thousand ($77,000.00) Dollars, came out of defendant's own pocket."

The defendant further alleges, in substance, that as security for the money he invested in the said plantation of his sister, including his money and that of the plaintiff, which included all that the plaintiff placed in the hands of the defendant, his said sister, Mrs. Julia B. Coward, mother of the plaintiff, from time to time executed unto the defendant bonds and real estate mortgages; that all of said papers dated prior to February 27, 1907, were intended as security for loans and advances made by defendant individually, while the plaintiff was a minor living at home with his mother, and the mortgages dated February 27, 1909, and May 28, 1912, were given as security and advances made and to be made by plaintiff and defendant jointly; and the defendant also alleges in his answer that the plaintiff had full knowledge of all of these transactions and consented to the same at the time of the transactions. The plaintiff, in his reply, denies all of these alleged transactions, in so far as he is alleged to have been connected with the same, and denies all other allegations contained in the defendant's answer which are inconsistent with the allegations of his complaint.

Pursuant to due notice counsel for the defendant moved before his Honor, Judge S. W. G. Shipp, resident Judge of an adjoining circuit of the Ninth Circuit, Judge Grimball being absent, for an order of dissolution or modification of the injunction issued by Judge Grimball, on the record and pleadings in the case and on supporting affidavits annexed to the notice. At the hearing of the motion the plaintiff submitted affidavits in rebuttal. After a full hearing, Judge Shipp issued his order in the matter, dated September 11, 1931, dissolving the order of injunction issued by Judge Grimball, and the case now comes before this Court on appeal by the plaintiff from the said order of dissolution.

The appellant presents twelve exceptions, but as we view the case and as suggested by appellant's counsel in his brief, the issues raised by the exceptions may be

considered under four allegations of error, and the first we shall consider is the error imputed to his Honor, Judge Shipp, in holding that the complaint did not state facts showing a trust relationship between the plaintiff and the defendant.

The allegations set forth in the plaintiff's complaint, upon which he relies to establish a trust relationship between himself and the defendant regarding the money sued for, are summed up in an agreed statement of counsel, appearing in the transcript, as follows: "The defendant, who was the uncle of the plaintiff and who in his capacity as local manager of the Hecker-Jones-Jewel Milling Company had employed him to work for the company under the defendant's supervision and control, requested the plaintiff, who was a minor, to turn over to him such sums as the plaintiff might be able to set aside out of his salary, agreeing to return these sums to the plaintiff on demand at any time and agreed to pay to him four (4%) per cent. interest on such sums. That the funds so turned over by the plaintiff to the defendant were invested by the defendant in various tracts of real estate, improvements thereon and mortgages, all of which were in the name of the defendant, until the plaintiff made demand for his money, at which time the defendant informed the plaintiff that he was unable to return his money as he had invested it in various parcels of real estate and mortgages; that as a result of this information the plaintiff realized that the various properties in which the defendant had invested the plaintiff's money were impressed with trust in the plaintiff's favor and that in December, 1930, the defendant cut and sold timber on these properties and threatened to continue to commit waste."

His Honor, Judge Shipp, upon due consideration, reached the conclusion that no facts were alleged in the complaint showing a trust relationship between the parties regarding the money for which the suit was instituted. Upon a careful consideration of the remainder of the complaint, in connec-

tion with the portion referred to above, we are of the opinion that Judge Shipp was right, for we are unable to find any statement of facts alleged in the complaint which, in our opinion, tends to establish a trust relationship regarding the funds in question; and, further, the contention of appellant, that under the facts alleged in the complaint a constructive trust was created, cannot be sustained. According to our view of the allegations of fact set forth in plaintiff's complaint they allege a loan of the money in question by the plaintiff to the defendant. Under the alleged facts set forth in the complaint the money in question was placed in the defendant's hands, at the request of the defendant, under an agreement to pay interest on the same at the rate of 4 per cent. per annum, and, further, to pay to the plaintiff the principal sum on demand. As recognized by the Courts, interest is the compensation allowed by law, or fixed by the parties, for the use of money, and the plaintiff having alleged that the money in question was delivered to the defendant under an agreement that the defendant should pay interest on the same at a certain rate per annum, and to pay to the plaintiff the principal sum when demanded by the plaintiff, in our opinion, a loan was clearly alleged, and the defendant had the right under that alleged statement of facts to treat the money as a loan and to use the same as such. Of course, under the alleged agreement, set forth in the complaint, it was the duty of the defendant to make payment of the principal sum when demand was made by the plaintiff for the same, as well as the interest agreed upon. The allegations of the plaintiff to the effect that the money he placed in the hands of the defendant was not properly used by the defendant, and that the use made of the same by the defendant was a wrongful appropriation and a breach of the condition of the trust "established by the original agreement under which the defendant received the money" of the plaintiff, are simply conclusions of law, there being no facts alleged in the complaint from

which a trust relationship between the parties can reasonably be inferred regarding the money in question.

It is contended that, because of the allegation in the defendant's answer to the effect that some of the real estate mortgages executed to the defendant by Mrs. Julia B. Coward, covering the tract of land on which she resides, were intended as security for money furnished or to be furnished the said Mrs. Coward jointly by the plaintiff and the defendant, the plaintiff is entitled to the injunction sought and granted by Judge Grimball and that, therefore, in any event, Judge Grimball's order should not be vacated in so far as the said order affects the mortgages executed by Mrs. Coward to secure the payment of the money furnished jointly by the plaintiff and the defendant. In this connection we call attention to the fact that the answer of the defendant further states, in effect, that the money turned over by the plaintiff to the defendant was delivered to the defendant in pursuance of an agreement between the plaintiff and himself that they would finance the farming operations of Mrs. Coward, the mother of the plaintiff and sister of the defendant to make improvements on her said property; and in this connection we further call attention to the fact that the plaintiff in reply to these allegations by the defendant denies such allegations and reasserts in full the allegations of his complaint to the effect that he lent the money in question to the defendant. Therefore, in no event can it be said that the alleged facts created a constructive trust in favor of the plaintiff in any of the mortgages in question. We further call attention to the fact that the plaintiff does not ask that a resulting trust be declared in any of the property mentioned in his complaint. He seeks only a money judgment against the defendant and he does not ask for a permanent injunction against the disposition by the defendant of any of the property described in his complaint. He seeks by means of an injunction, *pendente lite,* to preserve the property *in statu quo* to the end that, if he obtains a judgment against the defendant on his

money, there will be property which he may subject to his judgment. Upon due consideration of all of the facts alleged by the plaintiff and admissions made by the defendant, it is our opinion that it was error to issue the injunction in the cause, and that the order issued by Judge Shipp vacating said order of injunction was properly issued.

One of the allegations of error the appellant imputes to Judge Shipp, is that, in dissolving the injunction, his Honor considered only the complaint, when the motion was made upon the entire record; and, further, in this connection, charges that his Honor had no jurisdiction to do this, that is, issue an order of dissolution on the complaint alone to the exclusion of every other part of the record.

In the defendant's notice of motion to dissolve the injunction it was stated therein that the motion would be made on the record and the pleadings in the cause and also on the annexed affidavits. At the hearing the plaintiff filed affidavits in rebuttal. In the order of dissolution issued by Judge Shipp, his Honor states that the motion is made upon several grounds, and we assume that his Honor had in mind all of the grounds stated in the notice and that his Honor took into consideration not only the complaint but the answer of the defendant as well as the supporting affidavits filed by the respective parties, and the entire record in the case.

Another allegation of error imputed to Judge Shipp is that his order dissolving the injunction granted by Judge Grimball "was a review or reversal of the order of Judge Grimball, that is, one Circuit Judge overruling an order of another Circuit Judge on the same allegations in the complaint on which both orders were based."

The order of injunction issued by Judge Grimball was issued not on notice and rule to show cause, but at an *ex parte* hearing on the verified complaint alone. By reference to the order in question it will be observed that it is far-reaching in its effect, and, in our opinion, the defendant clearly had the right to move on notice to have the same vacated or modified.

If Judge Grimball had been in the circuit at the time such notice was served, he, of course, would have been the proper Judge to have heard the motion, but he being absent from the circuit, Judge Shipp, Judge of an adjoining circuit, had jurisdiction in the matter.

While we have not, in this opinion, made specific reference to every position urged in the briefs of counsel for the respective parties, we have duly considered the same.

It is therefore, the judgment of this Court that the dissolution order issued by his Honor, Judge Shipp, be and the same is hereby affirmed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and BONHAM concur.