## 13658

### METCALF v. HUNTLEY-RICHARDSON LUMBER CO.

(170 S. E., 162)

*Mr. Capers G. Barr,* for appellant,

230

*Messrs. M. A. Wright* and *F. G. Burroughs,* for respondent,

July 6, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant brought action in the Court of Common Pleas for Georgetown County to recover damages for trespass on real estate, and to restrain respondent from entering upon lands of appellant in Georgetown County, known as Sandy Island, and from cutting and removing timber and trees therefrom. He procured from Judge Ramage, then presiding in that Circuit, a temporary injunction of the nature sought by the complaint.

Respondent gave notice of a motion before Judge Ramage to dissolve the injunction, the hearing of which motion was transferred by order of Judge Ramage to Judge Stoll.

The motion was heard on the complaint, respondent's demurrer thereto, affidavits in behalf of both parties, and the deed from D. V. Richardson to Metcalf. Attached to the complaint were copies of the original and the amended timber contracts.

For a proper understanding of the issues involved, it is necessary to make a somewhat extended statement of the voluminous documents, save the two timber contracts, the salient features of which are embodied in the pleadings.

The complaint, omitting the formal parts, alleges:

That D. V. Richardson, by deed or agreement, dated May 14, 1924, sold and conveyed to respondent timber and timber rights on described lands lying in Georgetown and Horry Counties. April 25, 1929, D. V. Richardson made a supplemental agreement with defendant in relation to the timber and timber rights on the lands covered by the original agreement, situated on Sandy Island, Georgetown County, which lands D. V. Richardson had contracted to sell to appellant, and which he did sell and convey to him, in fee simple, by deed dated 29th day of May, 1929. The deed contained the following conditions and reservations: "Saving and Excepting, However, of and from the terms of this Deed of Conveyance, and specifically reserving unto me, the said D. V. Richardson, my heirs, executors, administrators and assigns, all of the timber and trees, timber rights, ways, privileges, easements and other rights on portions of the above described lands and premises, mentioned, described and (or) conveyed unto Huntley-Richardson Lumber Company by me, the said D. V. Richardson in and by a certain contract, or timber deed and contract bearing date the 14th of May, 1924, and recorded, * * * and, also, in and by a certain agreement or contract, bearing date the 25th day of April, 1929, and recorded, * * * both said timber deed and contract and said amendatory deed and contract being hereby declared to be parts and parcels of this deed of conveyance for a full, complete and accurate description of the timber and trees, timber rights, ways, privileges, easements, and other rights hereby excepted and reserved from the operation of this deed of conveyance, or intended so to be, reference being had thereunto will more fully and at large appear, it being my intention that this deed of convey-

ance is made, executed and delivered subject in all respects to the terms and provisions of said original timber deed and contract, and of said amendatory agreement or contract, for and during the time, term or period mentioned in said amendatory contract including the right to an extension of five (5) years therein provided for (upon payment unto the owner of said lands, of a certain annual rental therein specified), if the rights to such extension shall be exercised by Huntley-Richardson Company as therein required."

That plaintiff has no interest in any other lands covered by the timber deeds except Sandy Island.

That among the covenants set forth and assumed by defendant in the original timber deed, or contract, was the condition that at least 5,000,000 feet of said timber should be cut and removed from said lands by defendant each year beginning from the 1st day of January, 1924. That in buying the lands on Sandy Island plaintiff relied on the faithful performance of this covenant by the defendant; and in making such purchase plaintiff also relied on the faithful performance by defendant of the covenant set forth in the supplemental agreement and assumed by defendant, to wit: "The said conveyed timber on Sandy Island in Georgetown County shall be logged and cut continuously and progressively, as near as practicable, conditions of weather, flood conditions, and proper operation, strikes or conditions beyond said company's control, considered, from said lands at the rate specified in said indenture until all conveyed timber on said Island shall have been cut and removed," etc.

That defendant has failed to cut and remove the timber on Sandy Island continuously or progressively as provided for in the contracts, nor has he logged and cut the timber at the rate per year specified in the contracts, upon which covenants plaintiff relied when he purchased the lands, but, in violation of the contracts and covenants defendant on or about May 8, 1931, abandoned all logging or timber operations up to the date hereinafter mentioned.

That about January 30, 1933, defendant unlawfully and illegally entered upon Sandy Island and commenced cutting timber and trees thereon, and intends to continue until all available timber and trees on said lands are exhausted.

That plaintiff does not deny defendant's right to enter upon the lands on Sandy Island for right of way purposes as defined in the contract, but denies its right to enter thereon for the purpose of cutting timber and trees thereon, because it abandoned operations in 1931, and by the terms of the two contracts forfeited all right to any and all timber and trees remaining on said lands.

That defendant has evinced his intention to cut and remove the timber on Sandy Island despite plaintiff's objection and in disregard of plaintiff's title and exclusive right of possession; if such trespass be allowed to continue, a cloud will be cast upon plaintiff's title, and his enjoyment and possession of his property will be continually disturbed, and plaintiff, for the protection of his rights, will be compelled to institute numerous criminal prosecutions and actions at law, unless such trespass shall be prevented by action of this Court.

The prayer of the complaint is for $1,000.00 actual and $2,000.00 punitive damages; for a permanent injunction, and a restraining order *pendente lite;* and for such other relief as to the Court seems meet and proper.

The order of temporary injunction is in usual form, and gives leave to the defendant to apply to the Court or a Judge thereof, within ten days, for an order vacating or modifying the said order.

In due time defendant served notice that it would move before Judge Ramage for an order dissolving the injunction; the motion to be based on the complaint, the demurrer, the affidavits attached to the notice of the motion, and certified copy of the deed from D. V. Richardson to Jesse Metcalf.

The demurrer to the complaint interposed by the defendant is based on the following grounds: (1) That there is a defect of parties for that D. V. Richardson has certain equities in the timber described in the complaint as to which a forfeiture is sought, and is a necessary party to the determination of the issues involved in the action; (2) that the complaint does not state facts sufficient to constitute a cause of action, in that: (a) There is no allegation of nonpayment to D. V. Richardson under the terms of the indenture referred to, which nonpayment is essential to a declaration of forfeiture. (b) There is no allegation of a demand by the plaintiff on D. V. Richardson to declare a forfeiture between himself and the defendant under the terms of the indenture and his refusal to do so, such demand and refusal being prerequisite to maintenance of plaintiff's action. (c) There is no allegation of privity between the plaintiff and defendant of such nature as entitles plaintiff to maintain this action. (d) There is no allegation that the timber on Sandy Island has not been logged and cut continuously and progressively as near as practicable, "conditions of weather, flood conditions, and proper operations, strikes or conditions beyond said company's control, considered," whereas no forfeiture results from failure to cut continuously and progressively in the absence of showing that such failure was not occasioned by the conditions enumerated. (e) There is no allegation that the alleged cessation of cutting and removal was not a proper operation; if it was proper in the circumstances, no forfeiture would result. (f) No allegation of facts to show removal of defendant's equipment from Sandy Island and the institution of operations at other points. (g) No allegation that the defendant has failed to comply strictly with all terms of the contract with D. V. Richardson.

The defendant offered at the hearing of the motion to dissolve the injunction the affidavits of James R. Holbert and F. A. Burroughs.

Holbert's affidavit, condensed, is as follows:

Is now and was at times mentioned bookkeeper of defendant company, and as such is familiar with all of its records and the business transactions set forth in the affidavit. That, when defendant prepared to cut and remove timber from Sandy Island under its contract with D. V. Richardson, it established on the island necessary camps, tramroads, skidders, and other machinery necessary to operations there. At no time since beginning operations have its tramroads or camps been abandoned, nor has any of the machinery been removed therefrom; but all of those things have been in the custody of one or more employees of the company who have remained constantly on the island. That the company has never planned, nor intended to abandon its operations on the island, and at no time has it withdrawn from the project for the purpose of beginning operations elsewhere. The cessation of activities referred to in the complaint was considered by the company as temporary, to be resumed when circumstances permitted.

The company, under its contract with Richardson during the years named, cut timber as follows:

| | |
|---|---|
| 1927 | 8,068,262 |
| 1928 | 7,226,516 |
| 1929 | 8,237,707 |
| 1930 | 8,495,295 |
| 1931 | 1,485,678 up to May 8, 1931. |

That on May 9, 1931, when the timber operation was largely curtailed, there remained on the island, according to careful estimate prepared by deponent at the time, 7,860,590 feet of timber which was removable under the contract, which had a value of $4.00 per thousand; so, if a forfeiture were declared, property of an agreed value of $31,000.00 would be acquired by plaintiff without consideration.

That under the terms of the contract D. V. Richardson has been paid the sum of $53,142.87, which represents payment in full for all timber cut and removed to date, and ad-

vance payment sufficient to carry the contract through the year 1934.

That in May, 1931, the company had on hand 9,000,000 feet of lumber on its yards, with no demand therefor at any price commensurate with the cost of production. That market conditions throughout the country rendered it impossible to sell existing stocks, and rendered additions to such stock unwarranted. The company has always retained the same management and has been conducted on the same business principles which policy was pursued according to deponent's information and belief by other well-regulated companies throughout the entire country. When operations were suspended in May, 1931, conditions were beyond the control of the company, and resulted in great loss to it.

Without any disasters such as fire and flood, and with the same management, due to unprecedented decline in the prices of lumber, the company's financial condition changed from having a surplus of $66,755.29 as of December 31, 1929, to a deficit of $174,644.12 as of December 31, 1932, representing a loss in three years of $241,399.41.

The company manufactures lumber for furniture purposes, 95 per cent. of the timber used being gum, which deteriorates very rapidly when cut, and is unfit for furniture purposes if not manufactured within sixty days after severance. Gum lumber kept on the yard also deteriorates very rapidly. Hence regard for proper operation rendered it imperative that no further cutting or manufacturing be done in view of the presence on the company's yard of 9,000,000 feet of lumber which it could not dispose of. Due to the conditions described, the company was idle from May, 1931, till February, 1933, when reductions in wages and other factors entering into the cost of production had decreased, the company felt that it might resume operations, but without hope of immediate profit. It took the steps necessary to a resumption of operations at a cost in excess of $15,000.00. Based on experience, the loss of nonoperation of the plant

is $45,000.00 a year. On the first day of resumption an injunction was served which restrained the company from further operation.

When the company reluctantly ceased operations May, 1931, all of its laborers were thrown out of employment, and became, in the great majority of cases, dependent on Red Cross relief and private charity. That when it resumed operations on Sandy Island, and when restrained by the injunction, the company was employing 60 laborers on the island, with a weekly pay roll of approximately $600.00. There are other employees which brings the number employed by the company to 128. A majority of these have families dependent on them; deponent is informed and believes that at least 500 people will be directly affected by the stopping of the company's pay roll.

Deponent is informed and believes that plaintiff, who is a citizen of the State of New Jersey, employs no laborers on Sandy Island, and carries on no constructive enterprise thereon, but uses the property solely as a game preserve for the diversion of himself and his friends.

The affidavit of F. A. Burroughs in behalf of defendant's motion to dissolve the injunction is to the effect that he is trustee under an indenture dated April 8, 1932, executed by D. V. Richardson, the beneficiaries thereof being J. E. Bryan, Conway National Bank, Conway Savings Bank, and H. G. Cushman; the indebtedness secured by the indenture is at its face value the sum of $33,809.12. As security therefor there is pledged by said indenture the equities of D. V. Richardson in those two certain indentures between himself and the Huntley-Richardson Lumber Company, dated respectively May 14, 1924, and April 25, 1929.

The appellant filed in reply the affidavit of his attorney, Capers G. Barr, Esq., from which it appears that he personally handled the transaction in 1929 when Mr. Metcalf, the plaintiff herein, purchased the lands mentioned in the complaint from Mr. D. V. Richardson; that the original

supplemental agreement contained the following words: "The said conveyed timber on Sandy Island, Georgetwn County, shall be logged and cut continuously and progressively, as near as practicable, conditions of weather, flood conditions, and proper operation of its mill, or mills, strikes or conditions," etc.

Mr. Metcalf, the plaintiff, objected to these provisions, and before he would purchase the lands on Sandy Island he insisted on a change. In pursuance of his wishes, deponent sent a telegram to Mr. J. S. Lynch, president of defendant company, and in reply received by telegram the following answer: "Be satisfactory to strike out the following words on page three amended contract 'of its mill or mills.' "

That thereafter on April 29, 1929, deponent received a letter from Mr. Lynch, president of defendant company, confirming the said telegram as follows: "Will be satisfactory to strike out the following words on page 3 of Amended Contract: 'Of its mill or mills.' "

That before instituting this action he had a conversation with Mr. D. V. Richardson in which he stated to deponent that he had been paid in full for the timber concerned in this litigation; that he had a credit of something over $50,000.00. Deponent states on information and belief that on February 17, 1931, defendant posted a notice as follows: "We will cease operations entirely in the manufacture and logging department for a period of thirty days, or until such time as we are able to materially reduce the stock of lumber we now have on hand."

That defendant shortly thereafter entirely ceased operations, and such cessation continued until on or about the date mentioned in the complaint in the year 1933.

On the showing made by the complaint, the demurrer, the two timber contracts, the deed of Richardson to Metcalf, and the affidavits, the motion to dissolve the injunction was heard by Judge Stoll, who after hearing arguments for and against granting the motion took the matter under consider-

ation and later filed his order, dated February 24, 1933, dissolving the injunction.

The order dissolved the temporary injunction, and from it the plaintiff appeals, and states the grounds of his appeal under five exceptions, with several subdivisions. They make, however, but three questions, viz.: Was there a forfeiture? If there was such forfeiture, does it inure to the benefit of plaintiff? Is a temporary injunction necessary to protect any rights of plaintiff in the premises?

By two of his exceptions, the appellant charges error to the trial Judge because on a motion to dissolve the temporary injunction he has considered and passed upon the merits of the case without giving plaintiff his day in Court. The contention is without merit. The order of Judge Ramage which granted the injunction gave to defendant leave to move to dissolve it. The motion to dissolve was based upon the complaint, the demurrer, the affidavits and exhibits consisting of the timber contracts, and the deed from D. V. Richardson to plaintiff. The principal predicate upon which plaintiff founds his claim for injunction is the allegation that defendant has by ceasing to cut and remove timber from Sandy Island for a period beginning in May, 1931, and ending in February, 1933, forfeited his rights under the timber contracts. The demurrer challenges this issue. It was within the province of the Court to decide this question of law upon the facts submitted to him by the pleadings, exhibits, and affidavits. Moreover, appellant is not in position to urge this claim. It does not appear from the record that the question was presented to or passed upon by the Circuit Judge. It was not presented in the argument to this Court, and under the rule of this Court may be held to have been abandoned.

Judge Stoll held that there was no forfeiture, and that, if there had been one, plaintiff had no right to enforce it. We concur in these findings and conclusions.

In an elaborate argument, with the citation of many authorities, plaintiff seeks to show that our own Courts and those of other jurisdictions sustain his position. It is fundamental that, in cases arising upon contracts of the nature of those here involved, the case is to be determined on the facts of the particular case.

Propriety of the injunction is governed by the facts of particular case. *Delaware, etc., R. Co. v. Ashelman,* 300 Pa., 291, 150 A., 475, 69 A. L. R., 588, and note.

The language of the two timber contracts is plain and unambiguous. Defendant was well within the provisions of the contract, upon which plaintiff specially relies, to wit: "The said conveyed timber on Sandy Island in Georgetown County, shall be logged and cut continuously and progressively, *as near as practicable, conditions of weather, flood conditions, and proper operation, strikes, or conditions beyond said company's control, considered, from said lands at the rate specified in said Indenture,"* etc. (Italics added.)

It is conclusively shown that the cessation of operations from May, 1931, to February, 1933, was rendered necessary by regard for proper operation of the company's mills; and by circumstances wholly beyond defendant's control growing out of the worldwide depression in financial and commercial affairs, which shut down the markets and prevented defendant from disposing of the millions of feet of manufactured lumber then depreciating and wasting on its yards for lack of a market. Judge Stoll found that there was no abandonment of its rights under the contract by defendant; that its cause was justified by the conditions then prevailing.

Upon that showing Judge Stoll dissolved the temporary injunction.

"Except in cases where a statute gives an absolute right to an injunction an injunction, whether temporary or permanent, cannot, as a general rule, be sought as a matter of right, but its granting or refusal rests in the sound discretion

of the Court under the circumstances and facts of the particular case." *32 Corpus Juris,* p. 29, § 11.

"A proper discretion does not include the misapplication of the law to the conceded facts; and the Court must be guided by the law and facts disclosed by the particular case. And where the case made out by the complainant is perfectly clear, and he has complied with all the requirements of the law for the issuance of an injunction, he is entitled to the injunction as a matter of right. *On the other hand if the facts conclusively show that it would be inequitable and unjust to award an injunction, the Court has no discretion in the matter but must refuse it.*" *32 Corpus Juris,* pp. 32, 33, § 11.

"Defendant had right to move on notice to vacate or modify injunction *pendente lite,* issued at *ex parte* hearing on verified complaint alone, against transfer, incumbrance or other disposition of property described therein." Syllabus 5, *In re Coward v. Jones,* 167 S. C., 118, 166 S. E., 96, 97.

It is patent that Judge Stoll rightly held that there was no forfeiture, and that no injunction should issue on that ground.

It is a moot question, then, whether a forfeiture inured to the benefit of plaintiff. We may say that the specific reservations made by the deed from D. V. Richardson to plaintiff show beyond question that, if such forfeiture existed, it could be enforced only by Richardson.

Is plaintiff entitled to an injunction to protect any other rights he may have in the case? In addition to the prayer for permanent injunction, he asks actual and punitive damages for alleged trespasses upon his lands by defendant which cast a cloud upon his title, and interfere with his enjoyment and possession of his premises. The amounts so claimed are $1,000.00 actual and $2,000.00 punitive damages. There is a total lack of any showing that defendant cannot be made to respond to any judgment which plaintiff may obtain against him on this score. There is

then no need to maintain in force the temporary injunction for the protection of plaintiff's rights under this claim.

All exceptions are overruled, and the order appealed from is affirmed. Let it be reported.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.