13956

WHITE *ET AL.* v. METCALF
METCALF v. HUNTLEY-RICHARDSON LUMBER CO.

(177 S. E., 371)

*Messrs. Wright & Burroughs* and *H. L. Smith,* for appellants,

*Mr. Capers G. Barr,* for respondent,

December 3, 1934.

The opinion of the Court was delivered by Mr. C. T. Graydon, Acting Associate Justice.

Off the beautiful coast of South Carolina, in the County of Georgetown, lies Sandy Island, the subject-matter of the litigation here to be considered. Sandy Island is one of those innumerable places along our coast which caught the fancy of those interested in restful places for diversion. The island is filled with game and is lapped by the waters of the sea, restful and peaceful, a spot created by God and appreciated by some men. It formerly belonged to one D. V. Richardson and had upon it certain very valuable timber, and Richardson, desiring to reap the material benefits from said timber, sold it to the Huntley-Richardson Lumber Company under a contract of sale, the terms and conditions of which will more fully appear by reference to the suit of *Metcalf v. Huntley-Richardson Lumber Co.,* 170 S. C., 226, 170 S. E., 162. During the existence of the contract and before the same had been completed, Jesse Metcalf saw Sandy Island, desired it, and purchased it from Richardson, subject, however, to the timber contract. Metcalf no doubt realized the value of the trees to his newly acquired estate and he sought to preserve the trees and the woodlands in spite of the existence of the contract between Richardson and the lumber company.

The lumber company had been operating for a number of years and under the contract was supposed to cut at least five million feet of timber a year and to make certain payments to Richardson from the logging and the cutting of said timber. The contract contained a provision which required the lumber company to log continuously and progressively, as near as practicable, conditions of weather, flood coditions and proper operation, strikes, or conditions beyond said company's control considered, at the rate specified in the contract, and in 1931 the lumber company found that on account of conditions alleged to be beyond its control, to wit, the depression and the flooding of the lumber market, it was unable to continue its logging operations, but at that time it appears that the contract with

Richardson was paid far in advance. The lumber company, therefore, stopped its operation and did not attempt to resume the same until February, 1933, at which time the lawsuit here under consideration arose.

In 1933 the lumber company attempted to move back in on Sandy Island and continue its operation in that area, and then Metcalf brought an injunction proceeding in an attempt to stop the lumber company from cutting and removing the timber. A temporary injunction was issued by Judge Ramage on an *ex parte* showing with the right reserved in the order to move, on four days' notice, for its dissolution, and the defendant lumber company moved befor Judge Stoll for the dissolution of said injunction order and this motion was granted by Judge Stoll. The plaintiff Metcalf was not satisfied, so he applied to Chief Justice Blease for a supersedeas, and as a condition precedent to the granting of the *supersedeas,* Chief Justice Blease required the giving of two bonds, one to the Huntley-Richardson Lumber Company for the sum of $7,000.00, and one to the Clerk of Court for Georgetown County for the sum of $3,000.00, the first-named bond to protect the Huntley-Richardson Lumber Company from damages which it might suffer by reason of the injunction pending, and the second bond given to the Clerk of Court for Georgetown County conditioned to pay such damages as might be suffered or which theretofore had been suffered by any and all persons who were employed by the defendant-respondent (Huntley-Richardson Lumber Company) as of date March 28, 1933, and further gave the right to the plaintiff Metcalf to deposit in lieu of surety bonds the cash required by said order with the Clerk of Court, and the plaintiff Metcalf deposited with the Clerk of Court of Georgetown County the sum of $10,000.00 in cash, pursuant to the order of the Chief Justice.

The Supreme Court decided that the order of Judge Stoll was a correct one and affirmed that order and in that way

vacated the injunction granted by Judge Ramage which was set aside by the order of Judge Stoll but restored by the order of the Chief Justice, thereby preventing the lumber company from continuing its operations. The history of these various steps is also to be found in the case of *Metcalf v. Huntley-Richardson Lumber Company, supra.*

The attorneys for the lumber company, who also are the attorneys, in part, for the laborers, sought to be protected under the order, then moved before Judge Shipp for an order of reference to determine the damages suffered by the employees in the cause. Upon the call of this motion the attorney for Metcalf took the position that the Circuit Court had no jurisdiction of the matter and that only the Supreme Court could designate the referee. Judge Shipp overruled this contention, and then the attorney for Metcalf moved before Chief Justice Blease again for an order of *supersedeas* staying the holding of the reference until the Supreme Court passed upon the plaintiff's appeal from the order of Judge Shipp. This matter was heard before the Supreme Court on November 13, 1933, and in a *per curiam* order the appeal was dismissed.

No other position was taken by the attorney for Metcalf in opposition to the order save and except the one above outlined.

The order of Judge Shipp appointed C. W. Muldrow, Esq., of Florence County, a lawyer learned in the law and with much experience in equity matters, to hear and determine the matter as Special Master, and the Special Master called a reference at which considerable testimony was taken to establish the claims of the employees. The books of the company were offered in evidence and numbers, but not all, of the employees were sworn. This, however, was by an agreement by and between counsel to the effect that all of the employees, if sworn, would testify to the same purport as those who had been sworn. This was done presumably for the purpose of shortening the ref-

erence and, of course, having agreed to this, counsel for all parties are bound thereby.

The amount of the bond given by Metcalf is only $3,-000.00, and the Referee has found that the amount of damage done to the employees was $7,633.11 or that the amount of damage to the employees was $4,633.11 more than the bond. This report of the Special Referee was taken before Judge Grimball, who passed his order to the effect that the employees were not parties to the action and, therefore, were not properly before the Court, and he dismissed the proceeding without specifically ruling upon any other question raised.

There are several interesting questions involoved in this appeal which we will discuss in an effort to reach a logical and equitable conclusion as to rights of all parties interested in this branch of the case.

1. Have the employees the right to prove their claims in this action?

When the matter was brought before the Chief Justice, he saw, with that wisdom which characterized his service upon the bench, that the people who would ultimately lose while Metcalf and the lumber company were fighting over their rights would be the employees, and he decided, very properly, that there should be something done to protect the employees who would be forced to stand idly by and watch the lawsuit, and he, therefore, made Metcalf deposit $3,000.00 with the Clerk of Court of Georgetown County to pay such damages as might flow to the employees. This amount, experience has shown, is inadequate to compensate all of the employees for the time alleged to have been lost, but the Chief Justice no doubt had in mind that a reasonable bond would be sufficient. The bond was given in this action, and was a result of this action and is a part and parcel of this action, and the order requiring it referred to the employees of the lumber company and, therefore, it is evident to the Court that although the employees may not

have been technically parties to the suit, the order of Chief Justice Blease certainly intended to do something for their protection, and if it would not protect the employees the bond was "as sounding brass or a tinkling cymbal." We, therefore, conclude that the employees were by the order of the Chief Justice so designated that they could properly prove their claims in this action.

There is still another reason why this should be allowed. The attorney for Metcalf objected to the order of reference only on the ground that the Supreme Court and not the Circuit Court had jurisdiction to grant the same. He did not take the position then that no order of reference could be granted in any event because the .employees were not proper parties, but he simply stated that the power was in the Supreme Court and not in the Circuit Court. Even at the hearing of the matter before the Master he took no position then that the matter was not triable in the case then pending and by the procedure then and there invoked.

2. Were the claims properly and legally established? ■■ In a suit upon a contract for services the claimant is required to allege the breach of the contract and the damage flowing therefrom. If the party against whom the claim is made desires to show that the claimant could have minimized his damages, this has to be pleaded and proven, and it is not incumbent upon the claimant to establish this unless such plea is interposed. *Latimer v. York Cotton Mills.* 66 S. C., 135, 44 S. E., 559.

Metcalf had a perfect right to show in the reference by proof that these employees had not minimized their damage, and the Master could have taken those facts into consideration, but this Metcalf did not do. Therefore, the proof of the employees as to the amount of the damage suffered stood unchallenged and uncontradicted. The method of proof was, first, by the employee himself, and, second, by the books of the lumber company. To demand more proof than this would be unreasonable and perhaps impossible. The damages

were not speculative nor remote for the number of days worked by the employees, and the number of days during which the employees were idle was a mere matter of mathematical calculation, and whatever is susceptible of such exact demonstration is not speculative. Some sophistic minds deny that two and two make four, but the mere fact that these finespun theorists deny the existence of fundamental truths cannot remove the fact that the truth does exist, and for this Court to hold that damages which can be ascertained by simply multiplying the number of hours out of work by the rate per hour are speculative would be finespun reasoning against the laws of logic. We, therefore, conclude that in this proceeding the claimants had a right to establish their claims and further that the method of establishing the same was sufficiently definite and certain to satisfy all reasonable rules of evidence.

3. Can judgment be given for $7,633.11 in this ■ proceeding when the amount of the bond required was only $3,000.00?

The sole right of the employees to come into this action is given under the order of Chief Justice Blease. Without that order they are in no wise connected with the litigation between Metcalf and the lumber company. Without that order they are not parties to the litigation and have no rights of any kind in the litigation, and whatever rights they may have arise from the terms of that order and are also expressly limited by the terms of that order. The Master has no right, nor has this Court the right, to enlarge the penalty therein required, and the bond being for $3,000.00, the judgment of $7,633.11 cannot possibly be rendered against the plaintiff Metcalf in this action. The proportionate part that each employee would be entitled to under the $3,000.00 bond with reference to his entire claim is also a matter of mathematical calculation. Each employee would be entitled in a proportion to this effect $7,633.11 is to the amount of the proven claim of the employee as $3,000.00 is to the

amount the employee will get. The application of this simple example of proportion is not a difficult task, but it will have to be done by some one, and this Court has not the information in the record nor the desire to do that, but the Master no doubt or an expert accountant could determine this example in proportion in a short period of time.

That is the justice of the cause and this is a cause in equity. It is not right to make each individual laborer sue Metcalf or the bond in his own name. That would create a multiplicity of suits and be so expensive that the laborers who most need the protection would secure it in the least. Those whose wages are small and who do not make enough to save for the hard times could not pay the costs for litigation and thereby would be eliminated from the benefits of the bond given to protect them. Those whose claims were large would pursue the matter no doubt and secure the benefit of the bond. The law is made to protect the weak and oppressed and to reach down its mighty arm and lift up those who are in need of its assistance. It is made to curb the strong and the mighty and to force them to treat those not so fortunate with justice and equity. When the law fails in these functions, it ceases to be law and is a mockery. To hold that the order of the Chief Justice meant anything else would destroy the force and effect of that order and make his effort to protect the employees be but a sham.

The law is found just in its ministrations, and he who is required to and does comply with the terms thereof is entitled to know to what extent he will be penalized in the action if his effort fails, and this amount was set forth in the order of the Chief Justice. Metcalf, the plaintiff, had a perfect right to know that *in this proceeding* he could not be penalized more than the amount of $3,000.00. To hold otherwise would be to deny him the protection of the order which the Chief Justice passed.

It is, therefore, ordered that the order of Judge Grimball be reversed and that the case be remanded to C. W. Mul-

drow, Esq., Special Referee, for the purpose of ascertaining and determining the proportionate amount due to each employee in accordance with the views expressed in this opinion, and let the costs of this action fall upon the plaintiff Metcalf.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.